Good morning, counsel. We recognize you're coming all the way from Washington, D.C. as pro bono counsel, so the panel and the court thanks you for your involvement in this case. So please proceed and state your name for the record. Good morning, and may it please the court. My name is Hugum Chan, and I am pro bono counsel for the plaintiff appellant, Ms. Vina Yazzie. With the court's permission, I would like to reserve three minutes of my time for rebuttal. Keep your eye on the clock. We'll try to help you. Your Honor, this case is about a guise for discrimination. This court should reverse the district court's entry of summary judgment against Ms. Yazzie, because the trial record largely compiled by the defendants was littered with disputed material facts, and when viewed in the light most favorable to her, would allow a reasonable fact finder to sufficiently conclude that there was discrimination driving the termination of Ms. Yazzie. Do you think there's a fact issue at step three in the McDonnell-Douglas analysis? Your Honor, there's two ways in which you can. Yeah, well, let's use McDonnell-Douglas for the moment. Even with respect to McDonnell-Douglas, there are two nuanced approaches. Sure, if you can show directly discriminatory motive, then we don't have to do McDonnell-Douglas, but bear with me for a second. Sure. Even though you want to say something different. Yeah. Your Honor, there's certainly a disputed material fact in the third step of McDonnell-Douglas. And that's the step you're focusing on, right? You don't doubt that they offered a facially non-valid, up-valid, non-protextual reason. Your Honor, that is one basis of dispute, but the case law also. Well, that's why I want to focus on it. So do you think that when the county says she tested positive for marijuana while on the job, that's not a facially valid non-protextual reason? You can show later that it was a pretext for discrimination. That's step three. But I'm focusing on step two. Is there any factual issue on step two? Your Honor, it depends on how you look at it. The case law also says in this court that if the prima facie case is so strong, which I believe it is, that any sort of proffered reason could be considered pretextual if the prima facie case itself from the first step of McDonnell-Douglas. What are you relying upon for that principle? I'm sorry? What case or cases are you relying upon for that principle? You're saying that if the case in step one is so strong that it doesn't matter what the business in this case's argument and response is. You're saying it doesn't matter at all. It's pretextual automatic, right? Your Honor, that is my reading of Chuong v. UC Davis Board of Trustees at 225. Well, what do you have at step one here? You have at step one that she's a Native American. Correct. You've satisfied step one by showing she's a Native American. Correct. I just want to make sure. I'm just trying to figure out what's so strong here that we don't have to figure out whether or not we don't have to go to step three. Your Honor, what's very strong in step one as part of the prima facie case is that we have shifting rationales over a period of time by the defendants as to why they terminated her. Now, they have to some extent consistently said that they terminated her because of the drug test. That was consistent throughout. However, that is far too superficial of a way to look at it, especially in light of the case law. So with respect to the ‑‑ so I have two points to make on that. With respect to the case law, we have at least Payne v. Norwest Corp. at 113 F.3D 1080, in which the employer had consistently to some extent said that the plaintiff was fired as a result of insubordination. However, when you peel back that particular justification in that case, the underlying reasons of insubordination were all inconsistent, and the court concluded that that was a sufficient basis. But with respect, counsel, your argument is puzzling to me here, as has been pointed out. You meet the first prong. But the second prong, the county says, we don't allow people to do drugs on the job. Your client was claimed she did marijuana on the job. She said, well, they didn't treat these other people, they treated them differently. But it turns out, under the record, they didn't treat them differently. The people were substantially similar. So under the circumstances, you seem to be suggesting we just ignore the business's response because she's a Native American. But that's not the case law, is it? No, Your Honor. We're not asking the court to ignore the proffered reason. We're simply trying to argue that there's a dispute. What were their inconsistent reasons? Well, so over a course of a period of time, we initially have the July 2013 notice of intent to dismiss letter, as well as an August 2013 termination letter, both for purposes of this appeal are substantively the same. Not once in those letters do they identify the basis for her termination that they are identifying and proffering today as a reason as to why they're terminating her. Specifically, what they're proffering today is that she was in a public safety position. Now, what do those letters say? Those letters? Say you're being terminated because you tested positive for marijuana on the job. Do they not? Correct. Isn't that exactly the reason they're giving for terminating her? Your Honor, the letters say a little bit more than just that. They say they're terminating her for the drug use, and by the way, here's an exhaustive and specific identification of all of the relevant rules that are applicable to this particular situation. Not one of those rules that were identified is the rule that the defendants are relying upon today. Your Honor, you're talking about a legal justification as opposed to a factual one. See if we can agree on one thing. Do you agree that their factual justification for terminating her was consistent throughout, which is to say you tested positive on the job for marijuana use? Yes, Your Honor, they proffered. In fact, she did, but we're not disputing that. Your client originally said, no, I didn't, but it must be somebody else's test, and I never did, but later on admitted that she did. So they may have cited different parts of their regulations throughout in support of their position, but their position throughout was perfectly consistent. We're firing you because you tested positive for marijuana use on the job, correct? Correct, Your Honor. So you're arguing that their legal rationale for doing so must be consistent throughout? Your Honor, no one is disputing that, or at least we're not disputing that she could be terminated because she tested positive for drug use. But the policies have to be, of how they go about terminating her, have to be applied in a non-discriminatory manner. Okay, so let's get to step three, which is what I was trying to get to at the beginning. What evidence do you have that the policies were applied against her in a way that they weren't applied against non-Native Americans? In other words, she's got to show that I was discriminated against because of my race, and therefore similarly situated non-Native Americans weren't fired for the same offense. I don't see any of that evidence in the record. Your Honor, there's nothing in the record to show that similarly situated personnel were treated in some sort of different way or same way. Any evidence of stray comments? You know what I mean when I say that. Yes, yes. Supervisors or other people in the chain of command saying, we really don't like Native Americans or I particularly don't like enrolled members of the Navajo Nation. Anything like that? Yes, Your Honor. On exodid record, page 121, there's a verified interrogatory response that was submitted by the defendants, which indicated the instances in the time leading up to her termination in which she faced racially offensive behavior. With respect, counsel, weren't those comments made by people who were not her supervisors? Your Honor, it says that her allegation in that verified interrogatory response was that there were comments that were made, racially offensive, vile words that were used. I agree, but these were not her supervisors. These were random comments by people. The county's a big place, got a lot of employees. We have some people who are not very, they say bad things. And apparently they did that here for allegation as correct. But under the case law, in the question whether it was her supervisors, people who had control over her job and her performance, if someone like that made the comment, it might make a difference. But is there any allegation that a supervisor made such comments? Your Honor, the record has to be viewed in the light most favorable to her. And while there's no allegation in that interrogatory response that a specific supervisor made that specific comment, they did. How about proof that these comments by coworkers, and I take it that's what it was, correct? Yes. Herculated up to the supervisory level. Any evidence of that? Your Honor, I would refer back to the same verified interrogatory response. I read that answer. The answer to Judge Hawkins' question is you don't have any such evidence, do you? Your Honor, the record, when viewed in the light most favorable to her. I'm viewing it in the light most favorable. Tell me why the record supports the inference that Judge Hawkins asked you about. As I understand the record, who fired her? Mr. Latosky fired her. Did Mr. Latosky ever make any of those remarks? He specifically did not make any of those remarks. Okay. Was he present when those remarks were made, according to the record? That's a reasonable inference to be drawn from. Why? Because her allegation is that when those words, when that interrogatory term was used, supervisors stood by and took no corrective action. Certainly, she could say when those remarks were made, Mr. Latosky was there and heard. We don't have to guess. I mean, she was present when they were made, correct? Correct. So she could say Mr. Latosky was there and heard them, but she doesn't say that, does she? Your Honor, there are more artful ways of saying what she wanted to convey, but this was an interrogatory response that— Well, but she can submit—we're in summary judgment here, after all. She can submit an affidavit, a declaration, and she can say this is what happened. And so on this record, do we have any evidence that Mr. Latosky either took part or heard these remarks? She may have a wonderful hostile work environment claim, but that's not what we're here about. Your Honor, I stand—I go back to the interrogatory response when the reasonable inference to draw from that, when she says supervisors, is that that term encompasses Mr. Latosky and others at Mojave County. But part of the problem, counsel, isn't it that in this case, the county set forth its reasoning under Step 2 of McDonald, and your client realistically didn't really say much, didn't really respond very much at an early point. And in the summary judgment setting, if she doesn't say anything, her silence, in effect, gives credence to what the county said, does it not? Your Honor, I would dispute that she didn't say anything in opposition to the defense. She said something, but, I mean, she really did not confront with contrary evidence much of what was said by the county, did she? Well, your Honor, she was proceeding pro se at the time that she was— I understand that. I understand that. And so she's not required to comply necessarily with the niceties of local practice. She's not. I agree, but she still needs to confront the evidence that was used. In other words, if they say A, and she says, well, I don't know, that does not refute A, even though she is held to a lesser pleading standard because she was proceeding pro se. Isn't that correct? Your Honor, I'm running out of time. Just answer my question quickly and then take the rest of your time. Your Honor, I think when her three letters are construed together as an opposition, that that in and of itself substantively is not only an opposition, but it serves as a statement of controverted facts. Again, not the most artful statement of controverted facts, but nevertheless, a statement of controverted facts. Okay. All right. You'll save the rest of your time then. Okay. Thank you. Let's hear from the county. Good morning, Your Honors. My name is Justin Ackerman, and I represent Mojave County and Steve Letosky. I apologize in advance. I'm just getting over a cold, so if I cough. Sorry you have the cold, but you're fine. My three-year-old daughter's gift. To begin, the Court didn't really focus on, but I would like to speak very briefly on the waiver issues raised in the briefing. The majority, if not all, of the issues raised, as the Court has briefly touched on, were not raised in response to the summer judgment motions. I do contest. That's not jurisdictional, is it? We can forgive that waiver, can we not? The Court certainly has discretion on waiver issues. Was the plaintiff represented below? She was appearing pro se at the time. Isn't this a pretty good case in which to move to the merits rather than worry about technicalities, given that she was pro se? It's certainly within this Court's discretion to do so. Was the county prejudiced in any way by her failure to raise those issues? You won. We certainly did, Your Honor, but the issues being raised on appeal are being raised for the first time. Okay, so why are they wrong? Well, I would just like, just for the record, very briefly to correct something that was said. I'll certainly move to the merits, Your Honor. District Court Local Rule 83.3c very clearly says that anybody appearing before the District Court must comply with the rules, including the rules on summary judgment and responding. She was appearing pro se. May we safely assume that English is not her primary language? Yes, you may, Your Honor. I'll move to the merits. Let's go to the merits. Sure, certainly. As this Court has identified, the reason given for plaintiff's termination has been consistent, both factually and, I would submit, legally, throughout the proceedings. It was because she tested positive for marijuana, and that is the reason why they terminated her. And the reason is important because when you operate the type of machinery that plaintiff operated for the Public Works Department, it is heavy machinery that poses a risk of serious death or harm to anybody on the roads here. And you need to be alert. You need to be with full mental capacities when you operate this machinery. Let me make the argument that I thought your friend was going to make, and maybe we prevented him from making it, which is that you seem to have a different policy for non-public safety workers, right? They're supposed to be counseled, correct? There is a... At least a different set of guidelines. Yes and no. The guidelines, which are, you just said it right there, guidelines. If you look at Merit Rule 507, the very introductory provision of it, Section A, specifically says that the drug and alcohol policy is a guideline. So it is completely within the discretion of the director of the Public Works Department to view those rules or not. Well, did it make a difference in her termination that she was eventually classified as a public safety worker? Quite frankly, no, because Director Latosky undisputedly testified that he terminated every single Public Works Department member who tested positive for drugs or alcohol while on duty. Even those who did not deal with heavy machinery? That specific fact was not addressed in the summer judgment. Well, see, you're the one who brought up the heavy machinery. That's why I'm asking the question. I take it your position is that really isn't relevant at all. The policy was to terminate everybody, secretary, janitor, up through heavy machinery operator who used marijuana on the job. From the evidence that I've seen on the record, those who were terminated were those who owned commercial driver's licenses and operated the heavy machinery. Okay, so then it does make a difference that you're a heavy machinery operator. That's where the public safety concerns come in, and it's undisputed that Plaintiff was in this case. Is there any evidence that anyone besides Ms. Yazzie who used marijuana on the job was not treated in the same way? None. There was somebody that used something off the job, and that was different. But on the job, everybody was treated the same. I think there were like eight or nine Caucasians, and there were some Hispanics. And Ms. Yazzie, yes. To be precise, what happened was she was given a test while on the job, and that tested positive. That could have been the result of using marijuana before she came on duty, correct? There's no evidence that one way or another, Your Honor. Could be. There's no evidence one way or the other, then the answer to his question is yes. Yes, Your Honor. And under the policy, that makes no difference? I'm not arguing. Sure. Sometimes we ask a question, and the precise, correct answer helps you. Yes, Your Honor. Go ahead. Clearly she could have taken the drug before she came on to duty, but when she tested positive,  So you were firing her for being impaired on the job, not for smoking marijuana on the job, correct? Correct, Your Honor. Okay. Now, with respect to the gentleman who was found a couple hours later drunk, isn't there a good reason to believe that he was impaired on the job? See, the excuse here that was given is, well, we don't know whether he drank while he was on the job or not. But you don't know whether Ms. Yazzie smoked marijuana when she was on the job or not. You fired her for impairment. So why isn't that other case a comparable case? Well, there's no way of proving in that other case that that gentleman was impaired on the job. He may be impaired later on in the day, but there's no way of proving that at the time he was there on the job. Two hours later, he was impaired. Is that right? That's correct, Your Honor. Was any retrograde analysis done? I'm not understanding your question, Your Honor. Well, sometimes in DUI cases, you can establish the level of blood alcohol by doing a retrograde analysis back in time to determine if that's case. Was any retrograde analysis done with respect to this gentleman? Not to my knowledge, Your Honor. And for what it's worth to the court's submission, a retrograde analysis with regard to marijuana is the science, from what I understand, is completely different, and it's not as effective to the extent it matters. Now, the question was could the county have established from the fact that he had a blood alcohol level of some level two hours after he left the job that it was more likely than not that he had been impaired on the job? We do this in DUI cases all the time. Somebody refuses a test and it turns out to be an hour and a half later, and your county brings people into court and they say, I can tell from his test an hour and a half later that he was drunk an hour and a half before. So that's the question Judge Hawkins is asking. To answer your question, Judge Hawkins, to the extent the county could have conducted the test, I'm not aware that it did. I would also submit that the county has limited funds to do such things, and I don't think that it would be within their purview. Well, if it's correct, we don't know, but if it's correct that he could have used it while on the job and therefore would have been impaired on the job, doesn't that chew away at the step three of McDonnell Douglas? I don't think so at all, Your Honor. They have to show that the reason we gave for her termination wasn't pretextual, and I don't understand. Well, if he's a similarly situated non-native and he was treated differently, would that be sufficient to get past summary judgment? I don't think so, Your Honor, because no evidence was given otherwise. Well, I'm asking you to assume that evidence. I don't understand that no evidence was given otherwise. Let me change the hypothetical for you for a moment. Let's assume that two hours after this other gentleman is on the job, the same level of marijuana is found in his blood system or in a test, and the county says, well, we're not going to do anything because we can't prove that he did it on the job. Would that be sufficient to show that some non-native was treated differently? I don't think so, Your Honor. I think because Mr. Latosky was taking the position that if he could affirmatively prove almost, I'm going to use beyond a reasonable doubt, that somebody was on the job under the influence, then that's when he used his discretion to terminate, and in that particular instance, the one that we're all talking about, he couldn't establish that, and admittedly they didn't do a retrograde analysis. Wasn't it the county's burden to establish that? I think it's plaintiff's burden to establish that the reason he gave it was contextual. No, no, no. When she says, I was terminated because of who I am, a Navajo, and she points to this guy who was found impaired but had gone home at one point in time, wasn't it the county's burden to completely erase any possibility that he was similarly situated? I'm just not aware of any legal authority that would require the county to go out and do such a retrograde type analysis. Well, it is their burden to say, you said this person was similarly situated. He was not because this is someone we couldn't prove that this happened on the job. The consumption of alcohol on the job. I would add impairment, not to interrupt. Yet you've told us that it's entirely possible, given the state of the record, that she used marijuana before she came to work. Yes, Your Honor. What does that do about substantial similarity? Are you saying that it's not the county's burden to establish lack of similarity, lack of pretext? I think the county has given legitimate reasons for plaintiff's termination, and plaintiff has not presented sufficient evidence to show that the reason given, which was provided under sworn testimony, sworn affidavits, and was consistent throughout the entire termination process whatsoever, that the reason they gave was pretextual, and that is what their burden is, and they cannot do it through inference. It must be specific and substantial. So let's assume that they had an instance of a non-Native who tested the same level of marijuana and was not fired. That would be sufficient to create a factual issue at step three, would it not? If that non-Native American was tested while on duty at the same time, and it wasn't the situation where somebody went home and they didn't know when they were impaired, I would submit yes. Okay, I wanted to start from that baseline because then my other questions flow from it. Sure. Let's assume instead you have a non-Native who's tested an hour and a half after, or two hours after leaving duty and has the same level of marijuana in the system, and they don't fire that person. Would that be sufficient to create an issue of fact at step three? Potentially, Your Honor. I would have thought your answer would have been yes, but that's not our case. It isn't our case. I know the court hates hearing that response. So the answer to my question is yes? Yes. And the difference, therefore, you think this is not sufficient because it was alcohol and you can't really, and because it's alcohol, right? That's your difference. It's not simply because it's alcohol, and I don't want to sound like a broken record, but it's because they couldn't definitively show when she was on, when that particular person was on duty and impaired. Well, it wasn't that they couldn't definitively show, but they didn't establish that. Correct. And it's impossible for the county to establish that fact three, four years later when Ms. Yazzie's issues are at issue. And they can't go back and do a retrograde analysis. And how would the county know to do that when they would have to approve some sort of future litigation? I think the court would be imposing a very high standard that would be almost unreasonable in the county if they had to do that for every person who tested positive at some point in order to survive a Title VII in 1981 claim. Does the record indicate the ethnic composition of the other nine people who the county says were fired for civil rights? It indicates whether they were Caucasian or Hispanic or Native American. The answer is yes. Yes, Your Honor. And what's the breakdown? I believe it is eight Caucasian, one Hispanic, and one Native American, which is Ms. Yazzie. Is there any evidence about how that corresponds to the workforce in general? No, there isn't, Your Honor. I would just briefly touch on the 1983 issues with regard to Mr. Latosky. I would submit on the record there wasn't any intent or purpose to discriminate under the case law. Again, the reason given was consistent. It was because she tested positive, and that was the reason for termination, out of public safety concern. I would submit the same with the due process rights that they claimed. She was afforded every due process right there is. She was given notice of the positive test result. She was given the opportunity to present evidence to contest it otherwise. And, in fact, when she did, she lied. She said falsely. But she wasn't fired for lying. No, she wasn't, Your Honor. But it factors into whether they could have considered alternative means. Let me see. You say strict policy, no excuses, everybody gets fired. Now you're saying, well, maybe if she didn't lie. Which is it? I was just addressing their argument that they say we should have, like other employees, should have been given the opportunity to do some sort of drug testing program or drug remediation program. But you're saying there was no such program. There was no such program. And even if there was, how could the county have known to administer such a program when she flat denied that she had a positive test result? That's my point. Other questions by my colleagues? Thank you very much. Thank you, Your Honor. Counsel, you have some remaining time for rebuttal.  A couple points that I'd like to clarify. First, Your Honor, there is no evidence in the record that similarly situated people were treated in the same way. There's been a honing in on this, you know, on a few paragraphs of Mr. Lutovsky's declaration. Isn't that evidence? He said, I fired nine other people for testing positive for marijuana while they were on the job. They tested positive on the job. And the county says, here's their ethnic makeup. That's evidence, isn't it? Your Honor, that's evidence that he terminated those eight or nine people in a particular way, but there's no additional evidence that any of those folks were either in public safety positions or not. Because if those folks were in public safety positions, then, yes, Mr. Lutovsky could have terminated them immediately because the merit rules allow for it. Basically what he was saying is, look, I'm a hard ass on this. You test positively when you're on the job, you're out. I don't care who you are. Isn't that basically what he was saying? Your Honor, that is what he's saying, and that's a piece of circumstantial evidence that a fact finder can It's direct testimonial evidence, not circumstantial. What's the evidence to the contrary? Your Honor, correct, but it's a self-serving testimony that has no underlying documentation. That's okay. We do that. We send people to death row based on self-serving testimony by police officers that has no documentation. That's a good argument to the finder of fact, but it's not a good argument on summary judgment. The question is, what contrary evidence do you have? Your Honor, there's no specific contrary evidence to that particular point, but there's other pieces of circumstantial evidence in this case. Again, the shifting rationale is being provided by the defendants as to why they terminated her. What they're proffering now as the legitimate basis is something that was very straightforward that could have been said initially to her when they terminated her in 2013, but it wasn't until the motion for summary judgment almost two and a half years later Your Honor, I see that my time is up. May I finish? Yeah. Almost two and a half years later that they finally came up with a reason as to why she was terminated, the main reason as to why she was terminated, and I would submit that there's an inference to be drawn there by a reasonable fact finder, especially when the proffered reason is provided in litigation, that that allows a fact finder to infer discrimination. Thank you, counsel. Thank you again for your pro bono work. The case just argued is submitted, and we will now.
judges: Hawkins, M. Smith, Hurwitz